## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE LIDDICK, | : | **CIVIL NO.: 1:14-CV-01813** |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| BRENDA TRITT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

On September 17, 2014, the plaintiff, Wayne Liddick ("Liddick"), an inmate at the State Correctional Institution in Frackville, Pennsylvania ("SCI-Frackville"), commenced this *pro se* civil rights action pursuant to the provisions of 42 U.S.C. § 1983 by filing a complaint (*doc. 1*), followed by an amended complaint (*doc. 13*).[1] At the core of his amended complaint, Liddick claims that the defendants retaliated against him for filing a previous lawsuit, denied him access to the courts so that he could not litigate that lawsuit, violated his due process rights, and were deliberately indifferent to his safety.

---

[1] Although *doc. 15* is also titled "Amended Complaint" on the Court's docket, *doc. 15* merely contains portions of *doc. 13*, the operative amended complaint in this action. *Compare doc. 13 with doc. 15.*

On October 16, 2015, the defendants responded to the amended complaint by filing an answer (*doc. 33*). And, after the discovery period closed on September 16, 2016 (*see doc. 51* at 2), the defendants filed a collective motion (*doc. 59*) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. That motion, which has been briefed by the parties, is ripe for the Court's disposition. For the reasons set forth below, the defendants' motion for summary judgment should be granted in part and denied in part.

## II. Statement of Facts.[2]

The defendants, as the moving party, have filed a statement of the material facts, supported by adequate references to the record. *See doc. 60*. Liddick, as the non-moving party, has also filed a statement in response thereto. *See doc. 68*. Even though Liddick's *pro se* filings are entitled to liberal construction, his statement must still comply with the relevant rules of procedural and substantive law. Liddick's statement fails to do this in two respects.

---

[2] Pursuant to the Local Rules for the United States District Court for the Middle District of Pennsylvania, a party moving for summary judgment must attach to the motion "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The non-moving party is required to submit "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which it is contended that there exists a genuine issue to be tried." *Id.* Both statements must reference the record for support, and the moving party's statement will be deemed admitted unless controverted by the non-moving party. *See id.*

First, Liddick's statement only responds to some of the numbered paragraphs in the defendants' statement of the material facts. As noted above, however, a moving party's statement of the material facts will be deemed admitted, unless controverted by the non-moving party's statement. *See* M.D. Pa. L.R. 56.1. Thus, to the extent that Liddick's statement does not respond to the numbered paragraphs in the defendants' statement of the material facts, those numbered paragraphs will be deemed admitted. *See, e.g.*, *Joyner v. D.C.*, No. 04-CV-489, 2009 WL 2224757, at *3 n.5 (M.D. Pa. July 23, 2009) (deeming the moving party's statement of facts admitted, where the non-moving party's reply failed to provide individual responses to each of the numbered paragraphs contained in the moving party's statement of facts); *United States ex rel. Paranich v. Sorgnard*, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (adopting moving party's statement of facts where nonmoving party failed to comply with Local Rule 56.1), *aff'd*, 396 F.3d 326, 330 n.5 (3d Cir. 2005).

Second, Liddick's statement, to the extent that it is responsive, has largely relied on allegations in the amended complaint, which have not been properly verified pursuant to 28 U.S.C. § 1746. That statute provides, in material part, as follows: "Wherever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such

matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury[.]" 28 U.S.C. § 1746. Such statements must be made "substantially" in the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *Id.* Liddick's verification, however, does not state that his amended complaint was submitted under the "penalty of perjury," or that the statements contained therein are "true and correct," and thus, his verification does not comply with the requirements of 28 U.S.C. § 1746. Consequently, the Court will not consider the amended complaint as evidence to rebut the Defendants' motion for summary judgment. *See generally Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [the statements in the verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.") (citation omitted); *see also United States v. 225 Cartons, More or Less of an Article or Drug*, 871 F.2d 409, 414 n.4 (3d Cir. 1989) ("[The declarations] were filed under penalty of perjury pursuant to 28 U.S.C. § 1746 (1982) and thus satisfy the affidavit requirement of Rule 56 [of the Federal Rules of Civil Procedure].."); *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 107 n.8 (3d Cir. 2016) (noting that the district court "properly

disregarded" the defendant's "declaration of fact" since it did not state that "it was made 'under penalty of perjury' as required by 28 U.S.C. § 1746."); *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 122 (3d Cir. 2011) ("Unsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury . . . [Plaintiff's] declaration does not comply with this requirement, and thus the District Court was free to disregard it."); *Ray v. Pinnacle Health Hosps., Inc.*, 416 F. App'x 157, 164 n.8 (3d Cir. 2010) ("Unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746.").

### A. The Parties.

Liddick has been incarcerated at SCI-Frackville since November 16, 2000 (*doc. 60* at ¶ 14; *doc. 68* at ¶ 14), and in this civil rights action, he has named the following 12 defendants, all of whom worked at SCI-Frackville during the relevant time period in dispute: Superintendent Brenda Tritt ("Tritt") was the Superintendent at SCI-Frackville from April 25, 2013, until she retired on August 13, 2016 (*doc. 60* at ¶ 2; *doc. 68* at ¶ 2); Robert Collins ("Collins") was a "Superintendent 2" at SCI-Frackville from May 16, 2010, until he retired on April 12, 2013 (*doc. 60* at ¶ 11; *doc. 68* at ¶ 11); Anthony Kovalchik ("Kovalchik") was

a "Deputy Corrections Superintendent 2" while assigned at SCI-Frackville from 2012 until June 2015 (*doc. 60* at ¶ 3; *doc. 68* at ¶ 3); Charles Krah ("CO Krah"), Brian Bresnock ("CO Bresnock"), William Sierdzinski ("CO Sierdzinski"), Vincent Suzadail ("CO Suzadail"), and Nancy Snyder ("CO Snyder") were all "Corrections Officer 1" during the relevant time period at SCI-Frackville, and they are all still assigned to SCI-Frackville (*doc. 60* at ¶¶ 4-8; *doc. 68* at ¶¶ 4-8); Joyce Montemurno ("CO Montemurno") was a "Corrections Officer 2" during the relevant time period at SCI-Frackville (*doc. 60* at ¶ 9; *doc. 68* at ¶ 9); Sharon Luquis ("Hearing Examiner Luquis" or "Luquis") was a Corrections Hearing Examiner during the timeframe of 2012 through April 6, 2013, and then, September 28, 2013, through 2015—she has since retired (*doc. 60* at ¶ 10; *doc. 68* at ¶ 10); and, finally, Defendant Corrine Wilson ("RN Wilson") and Defendant Kathleen Shorts ("RN Shorts") are registered nurses and were registered nurses during the relevant time period at SCI-Frackville—they are both still assigned there (*doc. 60* at ¶¶ 12-13; *doc. 68* at ¶¶ 12-13).

**B. Liddick's Previous Lawsuit, *Liddick v. Collins, et al.*, 1:12-CV-01390 (M.D. Pa.).**

On July 19, 2012, while incarcerated at SCI-Frackville, Liddick filed a *pro se* complaint in the United States District Court for the Middle District of Pennsylvania. *Doc. 60* at ¶ 15; *doc. 68* at ¶ 15; *see Liddick v. Collins, et al.*, 1:12-CV-01390 (M.D. Pa.) (hereinafter, "*Collins*"). On September 27, 2012, two of the

defendants in that action, Dr. Sterling and Dr. Stanish, filed a motion to dismiss, along with a brief in support. *Doc. 60* at ¶ 16. Roughly a month later, on October 23, 2012, the other defendants—Robert Collins, Medical Director Eidem, Medical Director Snyder, Medical Director Starzel, Corrections Officer Hardy, Sergeant Boyer, Nurse Karen Haggerty, Grievance Coordinator Pete Damiter, Sr., and "CHCA" Stanishefski—filed a collective motion to dismiss, along with a brief in support. *Id.* at ¶ 17. Liddick did not file a brief in opposition to either one of those motions to dismiss. *Id.* at ¶ 18.

On November 14, 2012, United States Magistrate Judge Carlson issued a Report and Recommendation ("R&R") on Dr. Sterling and Dr. Stanish's motion to dismiss. *See id.* at ¶ 19. Judge Carlson recommended that their motion be granted and that they be dismissed from the case. *See id.* Liddick did not file any objections to the R&R. *Id.* at ¶ 20.

Approximately one month later, on December 12, 2012, United States District Court Judge Rambo issued an Order, adopting Judge Carlson's R&R and dismissing Dr. Sterling and Dr. Stanish from the case. *Id.* at ¶ 21. Judge Rambo then referred the case to the undersigned United States Magistrate Judge. *See Collins*, *doc. 23*. After being referred the matter, the undersigned issued an Order on December 17, 2012, directing Liddick to file, on or before January 31, 2013, a

brief in opposition to the other remaining defendants' motion to dismiss. *See id.* at ¶ 22. Liddick, however, did not file a brief in opposition. *Id.* at ¶ 23.

On May 24, 2013, the undersigned issued a R&R, recommending that the defendants' motion to dismiss be granted, the complaint be dismissed, and the case be closed. *See id.* at ¶ 24; *see also Collins*, *doc. 25*. Liddick did not file any objections to the R&R. *Doc. 60* at ¶ 25. On June 18, 2013, Judge Rambo adopted that R&R and directed the Clerk of Court to close the case. *Id.* at ¶ 26; *doc. 68* at ¶ 26. Then, on October 13, 2015, Liddick requested a copy of the docket sheet, which was sent to him. *Doc. 60* at ¶ 27; *doc. 68* at ¶ 27.

### C. Grievance # 428302.

The parties agree that Liddick filed Grievance #428302 (*doc. 62* at 85), regarding an incident that allegedly occurred in September of 2012. The parties disagree, however, as to the exact date of that incident. *Compare doc. 60* at 6 (asserting that the incident occurred on September 9, 2012) *with doc. 68* at 3 (asserting that the incident occurred on September 12, 2012). Nevertheless, in Grievance #428302, which is dated September 12, 2012, Liddick asserts that at "10:15 A.M." CO Snyder and Sergeant Purcell, who is not named as a defendant in this suit, were present and discussing *Collins*. *Doc. 60* at ¶ 28; *doc. 68* at ¶ 28. Liddick also asserts that, during this incident, Sergeant Purcell asked if he could be added as a defendant and that some of the other corrections officers, who were also

present, said that they did not care if they were added as defendants. *Doc. 60* at ¶ 29; *doc. 68* at ¶ 29.

On September 27, 2013, the grievance officer denied Grievance #428302. *See doc. 62* at 74, ¶ 8; *id.* at 84. Liddick did not appeal that decision to the Facility Manager or to the Secretary's Office of Inmate Grievance and Appeals. *Doc. 60* at ¶ 31.

**D. September 12, 2012.**

Liddick was at SCI-Smithfield from August 21, 2012, until September 11, 2012, when he was returned to SCI-Frackville. *Doc. 60* at ¶¶ 32-33. Liddick asserts that the following day, on September 12, 2012, he was returning from evening yard (*doc. 60* at ¶ 34; *doc. 68* at ¶ 34) and walking to his housing unit, when a group of corrections officers came up behind him and began referencing *Collins* (*doc. 60* at ¶ 35). Liddick testified at his deposition that CO Snyder was a part of this group. *Id.* at ¶ 36. Liddick also alleges, in his amended complaint, that CO Snyder was present when CO Sorkorsky, who is not a named defendant in this lawsuit, threatened Liddick by saying: "Wait until we get you back down below Liddick." *Doc. 60* at ¶ 37; *doc. 68* at ¶ 37. Liddick did not file a grievance regarding this incident. *Doc. 60* at ¶ 38.

**E. September 17, 2012, at Approximately 2:30 a.m.**

On September 17, 2012, Liddick was having difficulty sleeping, which he attributes to the nightmares he was having due to the "constant harassment" from staff regarding the filing of *Collins*. *Doc. 13* at ¶ 29; *see also doc. 60* at ¶ 39; *doc. 68* at ¶ 39. Liddick was also experiencing tingling and weakness in his left arm and side, which he attributes to his alleged diagnosis of "severe hypertension." *Doc. 13* at ¶ 39; *see also doc. 60* at ¶ 39; *doc. 68* at ¶ 39.

Liddick alleges that, given his experience, and history of hypertension, he knew that these senesations were a "precursor of heart problems," and thus, when "the Officer" made his rounds, Liddick requested that "the Officer" contact medical for emergency attention, so that medical could come to his cell with Nirtoglycerin pills. *Doc. 60* at ¶ 40. A few minutes later, around 2:30 a.m., medical staff came to his cell. *Id.* at ¶ 41. Liddick testified during his deposition that he "[doesn't] really recall who came to [his] cell." *Id.* at ¶ 42. Liddick also alleges, in his amended complaint, that, "[i]nstead of bringing some Nitroglycerin pills, [the medical staff] tried to add to [his] distress by talking nonsense and asking [him] questions to frustrate [him] rather than giving [him] medical treatment." *Id.* at ¶ 43. Liddick alleges, however, that he continued to ask the medical staff for such pills and that the staff continued to ask "inane questions." *Id.* at ¶ 44. Liddick further alleges that when he refused to answer any more of

their irrelevant questions, the medical staff left without treating him. *Id.* at ¶ 45.

RN Shorts wrote a progress note in Liddick's medical records, which indicates that

Liddick was alert, verbal with no visible signs of acute distress, and that Liddick

was behaving in an odd manner. *Id.* at ¶ 46. Specifically, RN Shorts wrote,

"[Liddick] referred to medical and psych re: odd behavior." *Id.* at ¶ 47. Liddick

did not file a grievance against RN Shorts or RN Wilson with regard to this

incident. *Id.* at ¶ 48.

### F. September 17, 2012, at Approximately 8:00 a.m.

On September 17, 2012, at approximately 8:00 a.m., CO Suzadail went to

Liddick's cell and told Liddick that he had a mandatory medical pass. *Id.* at ¶ 49.

A few minutes later, CO Sierdzinski went to Liddick's cell and told him the same

thing, that he had a mandatory medical pass. *Id.* at ¶ 50; *doc. 68* at ¶ 50. Liddick

informed CO Sierdzinski that he was having knee pain and that medical should

bring a wheelchair and escort him to the medical department. *Doc. 60* at ¶ 51; *doc.

68* at ¶ 51. CO Sierdzinski then gave Liddick a direct order to go to the medical

department. *Doc. 60* at ¶ 52; *doc. 68* at ¶ 52. Liddick, who allegedly was "weary"

of this direct order, refused to report to the medical department without a

wheelchair. *Doc. 60* at ¶ 53; *see also doc. 68* at ¶ 52. CO Suzadail and CO

Sierdzinski issued Liddick a misconduct, specifically, Misconduct B408555, for

refusing a direct order to report to the medical department. *Doc. 60* at ¶ 54. As

discussed more fully below, Liddick contends that this misconduct was issued in retaliation for him filing *Collins*.

When RN Wilson went to Liddick's cell with a wheelchair, the Defendants contend that he refused to go with her to mandatory sick call. *Id.* at ¶ 55. Liddick contends, however, that he did not refuse to go with RN Wilson; he just wanted to finish reading his misconduct charges. *Doc. 60* at ¶ 56; *see also doc. 68* at ¶ 55. Per Liddick, "[i]nstead of permitting [him] time to finish reading the Misconduct, Nurse Jane Doe, [CO] John Doe, and a second staff member, commenced [banging on his] cell door and began asking [him] questions to harass and intimidate him . . . ." *Doc. 60* at ¶ 57.

Ultimately, RN Wilson completed a "Release from Responsibility for Medical Treatment" form based on Liddick's refusal to go with medical personnel. *Id.* at ¶ 58. Liddick did not file a grievance against CO Suzadail, CO Sierdzinski, or RN Wilson regarding any of these alleged events. *Id.* at ¶ 59. Nevertheless, Liddick avers that these events are proof that CO Suzadail and CO Sierdzinski were retaliating against him for filing *Collins*. *Id.* at ¶ 60. During his deposition, Liddick testified that these COs knew of his previous lawsuit, but not because of anything that he has "on paper," but because he knows "how Frackville works." *Id.* at ¶ 61.

**G. Law Library Denial.**

On September 13, 2012, Liddick completed a DC-135A form, "Inmate's Request to Staff Member," requesting access to the law library. *Id.* at ¶ 62. On the bottom portion of this form, the following is written:

> Mon
> 9/17/12
> 1315
> Law Lib

*Id.* at ¶ 63; *see also doc. 13* at ¶ 29. Also on the bottom portion of this form, there appears to be a signature from a staff member, and a date of "SEP. 14" stamped thereon. *See doc. 13* at 29. Liddick alleges, however, that he was ultimately denied access to the law library on September 17, 2012. *Doc. 60* at ¶ 64. During his deposition, Liddick could not definitively say who was retaliating against him when he was denied access to the law library, but that it would have been CO Sierdzinski, because he was "wing officer" that day. *Id.* at ¶ 65. Liddick did not file a grievance regarding this alleged denial of the law library. *Id.* at ¶ 66.

**H. September 19, 2012.**

Liddick alleges that on September 19, 2012, he was going to recreation yard when he was stopped by CO Geico, who is not a named defendant in this lawsuit, and was told to empty his pockets. *Id.* at ¶ 67. Liddick further alleges that CO Suzadail was present and informed Liddick to return to the block, denying Liddick

yard and telling him that he "could add that to his lawsuit if he liked." *Id.* at ¶ 68.

Liddick did not file a grievance regarding this alleged incident. *Id.* at ¶ 69.

**I. September 20, 2012, Liddick's Misconduct B408555 Hearing.**

Liddick alleges that, on September 20, 2012, an "Officer" came to his cell

and asked him if he was attending his hearing for Misconduct B408555, to which

Liddick replied that he was attending his hearing. *Id.* at ¶ 71. Liddick alleges that,

about twenty minutes later, his cell door opened, and he was informed that he was

to wait in the TV area. *Id.* at ¶ 72. Liddick alleges that shortly thereafter, two

corrections officers arrived, placed handcuffs on him, and escorted him to the

Restricted Housing Unit ("RHU"). *Id.* at ¶ 73. Liddick alleges that, while he was

confined in the RHU, he received a copy of the Hearing Examiner Luquis's

decision, finding him guilty "in absentia" of the charges asserted in Misconduct

B408555. *Id.* at ¶ 74; *see also doc. 62* at 269-74. Liddick also alleges that the

Hearing Report suggested that he had refused to attend his hearing. *Doc. 60* at ¶

75; *see also doc. 62* at 269-74.

Liddick, who, again, claims that Misconduct B408555 was issued in

retaliation for filing *Collins* (*doc. 60* at ¶ 70), did not appeal Hearing Examiner

Luquis's decision. *Id.* at ¶ 76. As discussed more fully below, however, Liddick

contends that the only reason he did not appeal that decision, was because he was

prevented from doing so. *Doc. 68* at ¶ 76.

**J. September 27, 2012, Liddick's Transfer to SCI-Rockview.**

On September 27, 2012, Liddick was transported to SCI-Rockview for placement in the Mental Health Unit ("MHU"). *Doc. 60* at ¶ 77. From October 5, 2012, until October 18, 2012, Liddick was in the MHU at SCI-Rockview. *Id.* at ¶ 78. In the amended complaint, Liddick alleges that his placement in the MHU was malicious and designed to prevent him from responding to the "Motion to Dismiss" that had been filed in *Collins*. *Id.* at ¶ 79. He further alleges that Superintendent Collins was responsible for placing him in the MHU. *Id.* at ¶ 80. At his deposition, however, Liddick acknowledged that he does not know who was responsible for placing him in the MHU. *Id.* at ¶ 81. Liddick did not file a grievance regarding his placement in the MHU at SCI-Rockview. *Id.* at ¶ 82.

**K. October 20, 2012, Liddick's Placement in the Psychiatric Observation Cell.**

Upon his return from the MHU at SCI-Rockview, Liddick was placed in the Psychiatric Observation Cell ("POC") at SCI-Frackville from October 20, 2012, until October 23, 2012. *Id.* at ¶ 83. Liddick alleges that while he was confined in the POC, he was subjected to "torture." *Id.* at ¶ 84. At his deposition, Liddick testified that he wore a smock and only had a blanket. *Id.* at ¶ 85. He also testified that Collins and Kovalchik did not specifically do anything to him while he was in the POC (*id.* at ¶ 87), but that he named them as defendants with regard to this

incident because they were supervisors (*see id.* at ¶ 86). Liddick did not file a grievance regarding these alleged conditions in the POC. *Id.* at ¶ 88.

### L. October 23, 2012, Liddick's Return to General Population.

On October 23, 2012, Liddick was returned to general population. *See id.* at 16; *doc. 68* at 6. Although his property was given back to him, Liddick alleges that the legal documents were removed from their envelopes and scattered in a large trash bag. *Doc. 60* at ¶ 89. He also alleges that the "Defendants must have systemacically [sic] gone through" his legal papers while he was away. *Id.* at ¶ 90. At his deposition, Liddick acknowledged that he did not know who removed and scattered his property. *Id.* at ¶ 91. Liddick did not file a grievance regarding his property. *Id.* at ¶ 92.

### M. Moving Cells.

On December 22, 2013, Liddick was moved from cell AA1001 to cell AA1014, where he remained until April 5, 2014. *Id.* at ¶¶ 93-94. Liddick alleges that he was moved to cell AA1014, which was very cold, in retaliation for filing *Collins*. *Id.* at ¶¶ 95-96. When he was asked during his deposition who specifically retaliated against him by moving him into this cell, Liddick said, "So just about anybody can move you. So again, I don't know." *Id.* at ¶ 97. Liddick did not file a grievance regarding this cell move. *Id.* at ¶ 98.

### N. March 13, 2014, Liddick's Sick Call.

On March 13, 2014, Liddick had a sick call visit with Physician's Assistant Don Miller. *See id.* at ¶ 99. Liddick alleges that CO Snyder interfered with this visit, telling Liddick that he had to cut it short and that his medical issues would have to wait for another day. *Doc. 13* at ¶ 38; *see also doc. 60* at ¶ 99.  As a result of this alleged incident, Liddick wrote out Grievance 503279 (*doc. 60* at ¶ 100), but, per the Defendants, never filed it with the Facility Grievance Coordinator (*id.* at ¶ 101).  Liddick contends, however, that he did file Grievance 503279 and that it was ultimately rejected by the Facility Grievance Coordinator. *Doc. 68* at ¶ 101. In support of this contention, Liddick has produced the decision of the Facility Grievance Coordinator.  *See doc. 70* at 92.

### O. April 5, 2014, Misconduct B400721.

During his deposition, Liddick testified that, on April 5, 2014, he heard the bell, which indicated that there would be a count, so he jumped out of bed and turned on the light.  *Doc. 60* at ¶ 102.  He further testified that when he turned the light on, and the first corrections officer went by, he "literally started having some urine run down [his] leg."  *Id.* at ¶ 103.  So, "without thinking, [he] stepped up to take a leak."  *Id.* at ¶ 104.  It was at this point in time, that CO Montemurno was walking by his cell, and she "obviously [saw Liddick] standing there by the toilet."

*Id.* at ¶ 105. Liddick contends, however, that CO Montemurno did not look into his cell and that, even if she did, he was standing sideways. *Id.* at ¶ 106.

CO Montemurno issued Liddick Misconduct B400721 (*id.* at ¶ 107), wherein she explains that, during count, she observed Liddick "shaking his penis facing his cell door." *Id.* at ¶ 108. Liddick maintains that this misconduct is "false" (*doc. 68* at ¶ 107) and that she is retaliating against him (*doc. 60* at ¶ 112). He bases this belief on "word of mouth." *Id.*

**P. April 8, 2014, Misconduct Hearing on Misconduct B400721.**

On April 8, 2014, Hearing Examiner Luquis, held a hearing on Misconduct B400721, ultimately finding Liddick guilty. *Id.* at ¶¶ 109, 113. Liddick contends that Luquis was retaliating against him by falsely stating in the hearing notes that "Mr. Liddick yelled at HEX [hearing examiner], 'I want my Jailhouse Lawyer to assist me.'" *Id.* at ¶ 114. In support, Liddick alleges that he did not yell this; rather, he merely listed Patrick Horan as his Jailhouse Lawyer. *Id.* at ¶ 115; *see also doc. 68* at ¶ 114. Liddick also alleges that Luquis did not allow him to speak in his own defense during the hearing and that she "[didn't] want to hear [his] version, because [he] had it on paper." *Doc. 60* at ¶ 117. In support, Liddick contends that she would not place his "version of the false misconduct in the record." *Doc. 68* at ¶ 117. Although Liddick appealed Misconduct B400721 "up through the Chief Hearing Examiner" (*doc. 60* at ¶ 110), the misconduct was upheld (*id.* at ¶ 111).

### Q. May 8, 2014, Grievance #510007

On May 8, 2014, Liddick filed Grievance #510007 (*id.* at ¶ 118), wherein he complained that since he was diagnosed as "Axis I, Bipolar I—Manic, Psychotic, Schizoaffective—Bipolar Type," he was required to be designated as a D-Roster prisoner and transferred to SCI-Benner, a D–Roster facility (*id.* at ¶ 119). Liddick, however, did not specifically name any of the Defendants in Grievance #510007. *Id.* at ¶ 122.

Kovalchik, the Facility Grievance Coordinator, denied Liddick's grievance, finding that Liddick was currently a Stability B inmate, not a Stability D inmate. *Id.* at ¶ 120. Tritt, the Facility Manager, upheld this denial, stating in her decision, "If you disagree with this current assignment, I suggest that you contact the psychiatrist." *Id.* at ¶ 121. Liddick appealed this grievance through to the Secretary's Office of Inmate Grievances and Appeals. *Id.* at ¶ 123.

### III. Legal Standards.

The Defendants have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which

a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." FED. R. CIV. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*,

477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The proper inquiry of

the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV. Discussion.

The parties agree that there are four counts in the amended complaint: (1) an Eighth Amendment deliberate indifference count; (2) a First Amendment retaliation count; (3) an access to courts count; and (4) a Fourteenth Amendment due process count. *See doc. 61* at 6; *doc. 67* at 21. Neither party, however, has attempted to match all of the alleged incidents in the amended complaint to those four counts.[3] Nevertheless, the Defendants have moved for summary judgment on all four counts, primarily arguing that Liddick has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (the "PLRA"). *See doc. 61* at 19-25. In the alternative, some of the Defendants have moved for summary judgment on the merits. *See id.* 25-30.

Generally, the PLRA requires that inmates, like Liddick, present their claims through an administrative grievance process prior to seeking redress in federal court. More specifically, the PLRA provides that:

> No action shall be brought with respect to prison conditions under [§ 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[3] Thus, while Court has done its best to provide a clear and comprehensive Report and Recommendation for the United States District Court Judge, the presentation of the allegations and claims in the amended complaint, combined with the manner in which the parties have presented their summary judgment arguments, have made the Court's task complex.

42 U.S.C. § 1997e(a). Thus, in accordance with the PLRA, inmates must comply with exhaustion requirements regarding any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").

As the PLRA's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court –or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the Court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. *Id.* at 90; *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him. *Woodford*, 548 U.S. at 95. If, however, an inmate shows that the actions of prison officials directly caused the procedural default of his grievance, the inmate will not be held to strict compliance with the exhaustion requirement. *Brown v. Croak*, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." *Small v. Camden County*, 728 F.3d 265, 271 (3d Cir. 2013).

The Pennsylvania Department of Corrections has three grievance policies, all of which collectively provide an inmate with a forum to challenge every aspect of confinement. Those policies are: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Administrative Custody Policy, DC-ADM 802; (3) the Inmate Grievance Policy, DC-ADM 804. Only two of those policies are relevant here: DC-ADM 801 and DC-ADM 804.

As illustrated above, Liddick has set forth a number of allegations, which are based on incidents that purportedly occurred over a span of several years. With respect to most of these incidents, Liddick was required to follow the multi-tier process set out in DC-ADM 804. Under this process, an inmate must submit an initial grievance, in writing, to the Facility Grievance Coordinator, using the grievance form that is available on all housing units or blocks. *Doc. 62* at 94, ¶ 3. The initial grievance must be submitted within 15 working days of the events upon which the grievance is based (*id.*), and it must include a statement of the relevant facts and identify the individuals who were directly involved in the event(s) (*id.* at ¶ 5). Upon receipt of that grievance, the Facility Grievance Coordinator will assign the grievance to a grievance officer, who is not involved in the case. *Id.* at ¶ 6. That grievance officer will provide a written response, which is reviewed by the Facility Grievance Coordinator before being given to the inmate. *Id.* If the inmate is dissatisfied with the initial response, he must appeal it to the "Facility Manager (superintendent)," who then provides a written response to the inmate. *Id.* at 95, ¶¶ 7, 8. Any inmate who is not satisfied with the Facility Manager's response must submit an appeal for final review to the Secretary's Office of Inmate Grievances and Appeals within 15 working days from the date of the Facility Manager's response. *Id.* at ¶ 9. The Secretary's Office of Inmate Grievances and Appeals then issues a decision, which is provided to the inmate and the Facility Manager. *Id.* at ¶

11. A copy of the decision is also maintained in the Secretary's Office of Inmate Grievances and Appeals. *Id.* An inmate has not completed the grievance process unless he properly appeals his grievance to the Secretary's Office of Grievances and Appeals. *Id.*

### A. With Respect to the Following Incidents, the Defendants are Entitled to Summary Judgment Because Liddick Did Not File an Initial Grievance.

The Defendants contend, and the Court agrees, that with respect to the following incidents, Liddick did not exhaust his available administrative remedies because he did not even begin the process set out in DC-ADM 804, which required him to file an initial grievance with the Facility Grievance Coordinator:

1. On September 12, 2012, when Liddick was returning from evening yard and walking to his housing unit, a group of corrections officers, including CO Snyder, came up behind him and referenced *Collins*, his other lawsuit. It is undisputed that Liddick did not file a grievance regarding this yard incident. *Doc. 60* at ¶ 38.

2. On September 17, 2012, at approximately 2:30 a.m., when Liddick was having nightmares, as well as tingling and weakness in his left arm and side, unnamed medical staff did not bring him Nitroglycerin pills, and instead, added to his distress by talking nonsense and asking him questions to frustrate him. RN Shorts wrote a progress note in Liddick's medical records, which indicated that

Liddick was alert, verbal with no visible signs of acute distress, and behaving in an odd manner. *Id.* at ¶ 46. Liddick did not file a grievance against RN Shorts or RN Wilson regarding this incident. *Id.* at ¶ 48.

3. On September 17, 2012, at approximately 8:00 a.m., CO Suzadail and CO Sierdzinski went to Liddick's cell, within several minutes of each other, to inform Liddick that he had a mandatory medical pass. Liddick contends that he was having knee pain and requested a wheelchair. When RN Wilson arrived with the wheelchair, Liddick still refused to report to the medical department. Although Liddick maintains he has reasons for refusing the COs' orders and failing to comply with RN Wilson when she brought the wheelchair, it is undisputed that Liddick did not file a grievance against CO Suzadail, CO Sierdzinski, or RN Wilson as a result of these alleged events. *Id.* at ¶ 59.[4]

4. On September 17, 2012, Liddick was allegedly denied access to the law library. During his deposition, Liddick could not definitively say who was retaliating against him when he was denied access to the law library, but that it would have most likely been CO Sierdzinski, because he was "wing officer" that

---

[4] Liddick has raised several allegations regarding the morning of September 17, 2012. To the extent that any of those allegations can be construed to complain about events apart from the misconduct that he was issued, it is undisputed that Liddick did not grieve those events pursuant to DC-ADM 804. To the extent, however, that the allegations are related to the misconduct, Liddick's exhaustion efforts will be addressed below in the context of DC-ADM 801.

day.  *Id.* at ¶ 65.  It is undisputed that Liddick did not file a grievance regarding this library incident.  *Id.* at ¶ 66.

5. On September 19, 2012, when Liddick was going to recreation yard, CO Suzadail informed Liddick to return to the block, thereby denying Liddick yard and telling Liddick that he "could add that to his lawsuit if he liked."  It is undisputed that Liddick did not file a grievance regarding this incident.  *Id.* at ¶ 69.[5]

6. On September 27, 2012, Liddick was transported to SCI-Rockview for placement in the MHU.  In the amended complaint, Liddick alleges that Collins, the Superintendent, was responsible for placing him in the MHU.  *Id.* at ¶ 80.  At his deposition, however, Liddick acknowledged that he does not know who was responsible for placing him in the MHU.  *Id.* at ¶ 81.   It is undisputed that Liddick did not file a grievance regarding his placement in the MHU.  *Id.* at ¶ 82.

7. On October 20, 2012, upon Liddick's return from SCI-Rockview, he was placed in the POC at SCI-Frackville until October 23, 2013.  At his deposition, Liddick testified that Superintendents Collins and Kovalchik did not specifically do anything to him while he was in the POC (*id.* at ¶ 87), but that he named them

---

[5] As shown above, Liddick did not dispute this fact in his statement of the material facts.  Nevertheless, the Court observes that he has set forth allegations in his declaration that he asked for grievance forms for this incident, but was not given any. *See, e.g.*, *doc. 73* at ¶¶ 10-12. These allegations are vague and conclusory and will be disregarded by the Court. For instance, Liddick does not say when or how he asked for these forms, where he was when he made this request, or who ultimately failed or refused to give him the forms.

as defendants with regard to this incident because they were supervisors (*see id.* at ¶ 86). It is undisputed that Liddick did not file a grievance regarding the conditions of the POC. *Id.* at ¶ 88.

8. On October 23, 2012, when Liddick was returned to general population, he alleges that, although his property was returned to him, the legal documents were removed from their envelopes and scattered in a large trash bag. Liddick contends that the "Defendants" must have systematically gone through his legal papers while he was away. *Id.* at ¶ 90. It is undisputed that Liddick did not file a grievance regarding this property incident. *Id.* at ¶ 92.

9. On December 22, 2013, Liddick was moved from cell AA1001 to cell AA1014, where he remained until April 5, 2014. Liddick alleges that he was placed in cell AA1014, which was very cold, in retaliation for filing *Collins*. But, when he was asked during his deposition who specifically retaliated against him by moving him into this cell, Liddick said, "So just about anybody can move you. So again, I don't know." *Id.* at ¶ 97. It is undisputed that Liddick did not file a grievance regarding this cell change. *Id.* at ¶ 98.

Because it is undisputed that Liddick never submitted an initial grievance to the Facility Grievance Coordinator regarding any of these alleged incidents, Liddick did not comply with the multi-tier process set out at DC-ADM 804, and thus, he did not satisfy the PLRA's exhaustion requirement. Accordingly, the

Defendants are entitled to summary judgment with respect to these alleged incidents.

**B. With Respect to the Incident Underlying Grievance #428302, the Defendants are Entitled to Summary Judgment Because Liddick Did Not Appeal that Grievance.**

The Defendants also contend that even though Liddick initially filed Grievance #428302, he did not properly appeal that grievance in accordance with DC-ADM 804. The Court agrees. It is undisputed that on September 12, 2012, Liddick filed Grievance #428302, regarding the incident when CO Snyder and Sergeant Purcell discussed Liddick's other lawsuit, *Collins*, in front of him. *Doc. 60* at ¶ 28; *doc. 68* at ¶ 28. It is also undisputed, however, that Liddick did not appeal this grievance to the Facility Manager or the Secretary's Office of Grievance and Appeals. *Doc. 60* at ¶ 31. Thus, because there is no indication in the record that prison administration or staff prevented him from, or otherwise interfered with, filing such appeals, the Court concludes that excusing the PLRA's mandatory exhaustion would not be warranted here. *See, e.g.*, *Booth*, 206 F.3d at 299-300 (concluding that the district court properly held that the plaintiff failed to exhaust available administrative remedies when he made no showing that he had taken the second and third steps of DC-ADM 804, which required him to appeal the decision reached by the prison officials in the first step).

**C. With Respect to the Incident Underlying Grievance #510007, the Defendants are Entitled to Summary Judgment Because Liddick Did Not Name Any of the Defendants in that Grievance.**

The Defendants further contend that, although Liddick filed, and appealed, Grievance #510007, wherein he complained that about his status as D-Roster prisoner (*doc. 62* at 146), Liddick did not name or otherwise identify any of the Defendants in that grievance, and thus, he did not properly exhaust under DC-ADM 804. The Court agrees. While the PLRA does not have a "name all defendants" requirement (*Jones v. Bock*, 549 U.S. 199, 217 (2007)), inmates are required, nevertheless, to complete the administrative review process in accordance with the rules outlined by the prison's grievance system. *Id.* at 218. Here, the relevant provision of DC-ADM 804 required Liddick to identify individuals directly involved in the events. *See doc. 62* at 105 (DC-ADM 804 Procedures Manual § 1.A ¶ 11 (Dec. 2010) ("The inmate *shall* identify individuals directly involved in the event(s).") (emphasis added). Liddick, who has not alleged that it was impracticable for him to name any of the Defendants, has not complied with this provision. *Cf. Spruill*, 372 F.3d at 234 ("The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing.").

Even if, however, Liddick had named any or all of the Defendants, the Court finds it doubtful that he would have been able to show personal involvement on

their part. As pointed out by the Defendants, Liddick was instructed, through the appeals process, to contact the psychiatrist if he disagreed with his mental health status assignment of being a Stability B inmate, and not a Stability D inmate as Liddick mistakenly believed. *See doc. 62* at 149; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]").

### D. CO Snyder is not Entitled to Summary Judgment on the Basis of Exhaustion or on the Merits Regarding the Incident that Allegedly Occurred on March 13, 2014.

The Defendants also contend that Liddick did not exhaust his administrative remedies regarding the incident that allegedly occurred on March 13, 2014, when CO Snyder interfered with Liddick's sick call visit and directed him to end it early. In support, the Defendants contend that although Liddick wrote out Grievance #503279, complaining about this incident, Liddick never filed Grievance #503279 with the Facility Grievance Coordinator.

Liddick, however, has undercut the Defendants' argument by producing the Facility Grievance Coordinator's decision, rejecting Grievance #503279. *See doc. 70* at 92. That decision, which is dated April 8, 2014, checks box 13, which states: "Grievance is related to current litigation and will not be addressed in this forum." *Id.* Thus, the Court concludes that Liddick has met his burden in refuting the Defendants' argument that he never filed Grievance #503279. The record plainly

establishes that Liddick's grievance was received and ultimately rejected by the Facility Grievance Coordinator.

Although the Defendants also assert, in passing, that Liddick never appealed this grievance to final review, the Court finds this argument to be wholly undeveloped. In particular, the Defendants have not squarely addressed why Liddick would have been required to appeal under the circumstances presented in this case. As explained above, the rejection explicitly states that Liddick's grievance "[would] not be addressed in this forum." *Doc. 70* at 92. Even though the Defendants could have filed a reply brief to explain why Liddick was required, nevertheless, to appeal in the very same forum that prison administration informed him was unavailable, the Defendants have not done so.

Finally, the Court observes that, while some of the Defendants have moved in the alternative for summary judgment on the merits, CO Snyder has not, and thus, she has failed to specifically address the retaliation claim that Liddick has asserted against her. *See doc. 13* at 6, 19. This retaliation claim, as set forth in the amended complaint, coincides with the facts alleged in Grievance #503279—that CO Snyder interfered with Liddick's sick call visit on March 13, 2014. While the Court may question whether Liddick has offered sufficient evidence to support this retaliation claim, the Court is mindful that the Defendants have simply not met their burden in moving for summary judgment. Specifically, they have not shown

that Liddick failed to exhaust or that they are entitled to summary judgment on the merits. Thus, CO Snyder should be denied summary judgment, and the retaliation claim should proceed against her.

> **E. CO Suzadail and CO Sierdzinski are Not entitled to Summary Judgment on the Basis of Exhaustion or on the Merits Regarding the Incident that Occurred on the Morning of September 17, 2012.**

The Defendants contend that Liddick failed to exhaust his administrative remedies as they relate to Liddick's claim that CO Suzadail and CO Sierdzinski issued him Misconduct B408555 in retaliation for filing *Collins*. In support, the Defendants contend that Liddick neither filed a grievance regarding this misconduct, nor filed an appeal when he was found guilty of the charges asserted therein. *See doc. 61* at 20-21, 24-25. In so contending, the Defendants seem to suggest that the alleged retaliatory issuance of Misconduct B408555 is governed by DC-ADM 804 (*see id.* at 20-21), while the appeal process of that same misconduct is governed by DC-ADM 801 (*see id.* at 24-25). The Court rejects this distinction.

DC-ADM 804 specifically provides that "[a] grievance ***directly related to a specific inmate misconduct charge or a specific disciplinary sanction and/or the reasons for placement in administrative custody*** will not be addressed through the Inmate Grievance process and must be addressed through Department policy **DC-ADM 801, 'Inmate Discipline'** and/or **DC-ADM 802, 'Administrative Custody**

**Procedures.'"** *See doc. 62* at 104-05 (DC-ADM 804 Procedures Manual § 1.A

¶ 7) (Dec. 2010) (emphasis in original). Thus, because DC-ADM 804 excludes

from its coverage grievances directly related to misconduct charges, Liddick's

claim that CO Suzadail and CO Sierdzinski issued him Misconduct B408555 in

retaliation for his other lawsuit, *Collins*, is not barred by any failure to exhaust

under DC-ADM 804. Accordingly, CO Suzadail and CO Sierdzinski are not

entitled to summary judgment on the basis that Liddick failed to exhaust his

retaliation claim against them. And, although some of the Defendants have moved,

in the alternative, for summary judgment on the merits, CO Suzadail and CO

Sierdzinski have not specifically addressed the false misconduct retaliation claim

that Liddick has asserted against them. Thus, they are also not entitled to summary

judgment on the merits.

### F. CO Krah, CO Bresnock, and Hearing Examiner Luquis are not Entitled to Summary Judgment on the Basis of Exhaustion.

The Defendants contend that after Liddick received Misconduct B408555,

he did not appeal it to any level, and thus, he has failed to exhaust his

administrative remedies. Liddick asserts, however, that the only reason he did not

appeal Misconduct B408555 was because he was prevented from doing so. In

support, he raises several allegations: that although he informed prison staff that he

wanted to attend his misconduct hearing, he was taken to the RHU and not his

hearing; that while he was confined in the RHU, he received Hearing Examiner

36

Luquis's decision, which found him guilty of the charges in Misconduct B408555; and that he also received a Waiver of Disciplinary Procedures form, which indicated that he had waived his hearing. In connection with these allegations, Liddick has produced a declaration, wherein he states, under the penalty of perjury, that CO Krah and CO Bresnock "falsified" the Waiver of Disciplinary Procedures form.[6] *Doc. 73* at ¶ 18. Thus, because they had "falsified" the form, Liddick contends he was deemed to have refused to attend his hearing, and for that reason, was unable to appeal Misconduct B408555, pursuant to Section 3 of DC-ADM 801,[7] which states as follows:

---

[6] As discussed above, Liddick did not properly verify the allegations in his amended complaint. Liddick did, however, properly verify all three of his declarations that he filed in opposition to the Defendants' motion for summary judgment. *See, e.g.*, *doc. 73* at ¶ 24 (declaring "under penalty of perjury that the foregoing is true and correct").

[7] DC-ADM 801, like DC-ADM 804, is a multi-tier process. Under DC-ADM 801, an inmate who is found guilty of a misconduct charge and who disagrees with either the finding of guilt or the sanction imposed, may file an appeal with the Program Review Committee ("PRC") at the institution within 15 calendar days of his hearing. *Doc. 62* at 227, ¶ 9. If the inmate is dissatisfied with the PRC's response, he may then appeal to the Superintendent of the institution with 7 calendar days of the receiving the PRC's decision. *Id.* at ¶ 10. And, if the inmate is still dissatisfied with the Superintendent's response, the inmate may appeal to the Office of the Chief Hearing Examiner within 7 days of receiving the Superintendent's decision. *Id.* at 228, ¶11.

### F. Inmate Refusal to Attend Hearing

> 1. An inmate who refuses to attend a hearing shall be asked to sign a **DC-141, Part II(D)** advising that he/she has a right to a hearing but may waive that right.
>
> 2. If the inmate refuses to attend the hearing or sign a waiver, two staff members who witness the refusal shall sign the **DC-141, Part II (D)**. The hearing shall be conducted without the charged inmate present. The Hearing Examiner shall determine guilt or innocence, and a sanction shall be imposed if the inmate is found guilty.
>
> 3. The inmate may not appeal the result of a hearing he/she refused to attend.

*Doc. 62* at 244-45 (DC-ADM 801 Procedures Manual § 3.F) (June 2008) (footnote omitted) (emphasis in original).

However, the Defendants—who acknowledge Liddick's allegations that the Hearing Report indicated that he had refused to attend the misconduct hearing—have not addressed Liddick's argument or otherwise attempted to explain why Liddick would have been required to appeal the result of his misconduct hearing, despite a provision within DC-ADM 801, explicitly suggesting that Liddick was not allowed to file any appeals. Accordingly, the Court finds that the record supports Liddick's contention that DC-ADM 801 was unavailable to him, and because the Defendants have not raised any argument in response thereto, CO Krah, CO Bresnock, and Hearing Examiner Luquis should be denied summary judgment on the basis of exhaustion.

In addition to arguing exhaustion grounds, CO Krah, CO Bresnock, and Hearing Examiner Luquis have also moved for summary judgment on the merits. In particular, they contend that they are entitled to summary judgment on Liddick's retaliation and due process claims as they relate to the Misconduct B408555 hearing. The Court addresses each of these contentions in turn.

### G. CO Krah, CO Bresnock, and Hearing Examiner Luquis are Entitled to Summary Judgment on Liddick's Retaliation claim.

As discussed above, Liddick alleges that, on September 17, 2012, CO Sierdzinski and CO Suzadail issued him Misconduct B408555 in retaliation for filing *Collins*. *Doc. 13* at 7-9. Liddick also alleges that in connection with his hearing for Misconduct B408555, CO Krah, CO Bresnock, and Hearing Examiner Luquis further retaliated against him, in violation of the First Amendment, by refusing to allow Liddick to call witnesses, present evidence, and have an impartial hearing examiner at his misconduct hearing. *Id.* at 9-11. Liddick claims that this retaliation was also a result of *Collins*. *See id.* at 2, 7-9, 11, 19.

It is beyond cavil that "[r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). A prisoner claiming that a defendant retaliated against him for exercising his constitutional rights must prove that: (1) his conduct was constitutionally protected; (2) he suffered "adverse action" at the hands of the defendant; and (3) his constitutionally protected conduct was a substantial or

motivating factor in the decision of the defendant. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002). "Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.' " Id. (quoting Rauser v. Horn, 241 F.3d 330, 334 (3rd Cir. 2001)). Prison officials may prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser*, 241 F.3d at 334.

In moving for summary judgment, the Defendants argue that Liddick has not established element three—that the filing of *Collins* was a substantial or motivating factor in the decision of the Defendants. *Doc. 61* at 28. In particular, the Defendants contend that Liddick has not shown how CO Krah, CO Bresnock, or Hearing Examiner Luquis would have even been aware of Liddick's previous lawsuit because none of them were named as a defendant. *Id.* Thus, since Liddick has not established all three elements of his retaliation claim, the Defendants contend that they are entitled to summary judgment. *Id.*

Even assuming that Liddick has satisfied the first two elements of his retaliation claim—i.e., that he engaged in constitutionally protected activity by filing *Collins* and that he suffered an adverse action at the hands of the defendants when they refused to allow him to call witnesses, present evidence, and have an

impartial hearing examiner at his Misconduct B408555 hearing—the Court concludes that Liddick has still failed to satisfy the third element, that the filing of *Collins* was a substantial or motivating factor in the alleged adverse decisions. Not only are Liddick's allegations as broad as they are conclusory, but they shed no light on the causal link between the filing of *Collins* and the alleged retaliatory conduct that is alleged to have taken place here. Liddick initiated *Collins* on July 19, 2012, and the alleged retaliatory conduct did not occur until September 20, 2012. Thus, the timing of the conduct is not, in itself, "unusually suggestive" such that a causal link can be inferred. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *Rauser*, 241 F.3d at 334; *see also Cessna v. Lewis*, No. 3:14-CV-0361, 2015 WL 1299733, at *7 (M.D. Pa. Mar. 23, 2015) ("Courts have rebuffed efforts to infer causation from temporal proximity when a span of weeks or months separated the constitutionally protected conduct from the alleged acts of retaliation.") (collecting cases). Moreover, Liddick did not name CO Krah, CO Bresnock, or Hearing Examiner Luquis in *Collins*, and Liddick has failed to allege how these particular defendants would have known about *Collins* or what other connection they may have had to *Collins*. Thus, the Court agrees with the Defendants that Liddick has failed to establish the third element of his retaliation claim. Accordingly, CO Krah, CO Bresnock, and Hearing Examiner Luquis are entitled to summary judgment on Liddick's retaliation claim.

**H. CO Krah, CO Bresnock, and Hearing Examiner Luquis are Not Entitled to Summary Judgment on Liddick's Due Process claim.**

In addition to being retaliated against, Liddick alleges that he was denied due process of the law by CO Krah, CO Bresnock, and Hearing Examiner Luquis during his Misconduct B408555 hearing because they refused to allow him to call witnesses, present evidence, and have an impartial hearing examiner. *See doc. 13* at 19. In moving for summary judgment, the Defendants contend that because Liddick had "appeal options," he had a "meaningful post-deprivation remedy" and was not, therefore, denied due process. *Doc. 61* at 30. In support of this contention they cite to *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) for the proposition that "[a]n unauthorized intentional deprivation of property by prison officials does not violate the Due Process Clause 'if a meaningful post-deprivation remedy for the loss is available.'" The Court, however, is unpersuaded.

Initially, the Court observes that this argument is inchoate. The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. 14, § 1. The Defendants seem to suggest that the protected interest at issue is "property;" yet, the Defendants have wholeheartedly failed to identify any property that Liddick alleges he was deprived.

Even assuming, however, that Liddick has alleged a deprivation of property, which the Court does not think he has, the Court still finds that Liddick has

undermined the Defendants' contention that he had "appeal options." As explained above, Section 3 of DC-ADM 801 states that inmates "may not appeal the result of a hearing he/she refused to attend." Per the documents in the summary judgment record, Liddick was deemed to have refused to attend the Misconduct B408555 hearing. Thus, while a prison grievance program and internal review may normally provide for an adequate post-deprivation remedy to satisfy due process (*see, e.g.*, *Tillman V. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)), DC-ADM 801 was not available to Liddick under the facts of this case and did not, therefore, constitute a "meaningful post-deprivation remedy."

Thus, CO Krah, CO Bresnock, and Hearing Examiner Luquis should be denied summary judgment on the basis that they have not identified a "property" interest, and even if they had, they have not shown that Liddick had a "*meaningful* post-deprivation remedy." Accordingly, Liddick's due process claim against these Defendants should proceed.

### I. CO Montemurno is Not Entitled to Summary Judgment on the Basis of Exhaustion or on the Merits.

Finally, the Court observes that the Defendants have not moved, either on the basis of exhaustion or on the merits, for summary judgment on the retaliation claim that Liddick has asserted against CO Montemurno. Although the Defendants have discussed in their statement of facts the incident that allegedly occurred on April 5, 2014—i.e., when CO Montemurno allegedly retaliated against Liddick by

issuing him a false misconduct, specifically, Misconduct B400721, for "shaking his penis facing his cell door," (*doc. 60* at ¶ 108)—the Defendants have not addressed this retaliation claim in either their exhaustion section or merits section of their brief. Thus, because the Defendants have outright failed to move for summary judgment on the retaliation claim against CO Montemurno, this claim should be allowed to proceed.

**J. Conclusion.**

Thus, based on an assessment of this case, the Court concludes that the following claims should be allowed to proceed against the following Defendants:

> 1. First Amendment retaliation claim against CO Snyder, regarding her alleged interference with Liddick's sick call visit on March 13, 2014.

> 2. First Amendment retaliation claim against CO Suzadail and CO Sierdzinski, regarding the allegedly false Misconduct B408555 that they issued to Liddick on September 17, 2012.

> 3. Fourteenth Amendment due process claim against CO Krah, CO Bresnock, and Hearing Examiner Luquis, for allegedly refusing to allow Liddick to call witnesses, present evidence, and have an impartial hearing examiner for his hearing on Misconduct B408555.

> 4. First Amendment retaliation claim against CO Montemurno, regarding the allegedly false Misconduct B400721 that she issued to Liddick on April 5, 2014.

## V. Recommendation.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the Defendants' motion (*doc. 59*) for summary judgment be **GRANTED** in part and **DENIED** in part.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **31st** day of **August, 2017**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge